IN RE BLUE RIDGE TEXTILE PRINTERS v. PUBLIC SERVICE CO.

[99 N.C. App. 193 (1990)]

IN THE MATTER OF: BLUE RIDGE TEXTILE PRINTERS, INC. (JAMES F. GENNUSA, PRESIDENT), POST OFFICE BOX 5334, STATESVILLE, NORTH CAROLINA, 28677, COMPLAINANT v. PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC., RESPONDENT

No. 8910UC924

(Filed 19 June 1990)

1. **Gas § 1 (NCI3d) — appropriate rate schedule — sufficiency of evidence**

    Evidence was sufficient to support the Utilities Commission's findings and conclusions regarding the proper rate schedule for complainant's account for gas service.

    **Am Jur 2d, Public Utilities §§ 87, 117, 123, 242, 244.**

2. **Gas § 1 (NCI3d) — reclassification of gas customer — prior Utilities Commission order not violated**

    The Utilities Commission did not violate its own order in placing complainant retroactively in a different classification for gas service, since the order to which respondent referred applied only to new gas customers, and complainant's plant was already in existence and receiving gas service from respondent when the order in question took effect.

    **Am Jur 2d, Public Utilities §§ 87, 117, 123, 242, 244.**

3. **Gas § 1 (NCI3d) — overcharges for gas service — "established rate" — statute improperly applied**

    The remedy and corresponding limitation period in N.C.G.S. § 62-132 should never have been applied in complainant's action to recover overcharges for gas service, since the rates charged by respondent were "established" by the Utilities Commission, that is, determined by the Commission after a full hearing, findings, conclusions, and a formal order, and that statute applies only where the rates in question are "other than those established by the Commission."

    **Am Jur 2d, Public Utilities §§ 87, 117, 123, 242, 244.**

APPEAL by Public Staff of the North Carolina Utilities Commission and by respondent Public Service Company of North Carolina, Inc. from Order of the North Carolina Utilities Commis-

sion entered 5 June 1989. Heard in the Court of Appeals 12 March 1990.

This action was instituted by complainant Blue Ridge Textile Printers, Inc. (hereinafter "Blue Ridge") to obtain a refund for gas service overcharges since 1 September 1981. According to the record on appeal, the following facts are uncontroverted:

1. Since 1980 Blue Ridge has been receiving gas service from Public Service Co. of North Carolina, Inc. (hereinafter "Public Service") on two separate accounts referred to in the record as Accounts 4-1 and 7-0.

2. Before determining what rates to charge Blue Ridge and its other customers, Public Service assigns each account a curtailment priority pursuant to Commission Rule R6-19.2. These priorities determine the order in which Public Service may curtail service to its accounts in the event of a shortage.

3. To compensate customers whose accounts are assigned lower curtailment priorities, Public Service places these accounts on more favorable rate schedules.

4. Since August 1978, Public Service has had such a favorable rate schedule available to industrial customers "with no alternate fuel capability qualifying for Priority 2.5 through 2.7 under the North Carolina Utilities Commission Rule R6-19.2." Priority 2.5 is available to industrial customers for "process, feedstock, and plant protection" who use between 50 and 300 Mcf (1000 cubic feet) per day, and have "no alternate fuel capability."

5. This rate schedule, however, also provided that it was subject to certain special terms and conditions located on the reverse side of the schedule. Among these terms and conditions was the following: "The Customer agrees . . . to have and to maintain complete standby fuel and equipment available and agrees to use it whenever necessary."

6. Although this rate schedule, originally designated Rate Schedule 23, was succeeded by Rate Schedule 60 which was in turn succeeded by Rate Schedule 20, the present version is the same as the original except for minor differences in the availability language.

7. Plaintiff's account 7-0 was originally assigned to curtailment priority 2.1 and Rate Schedule 22 in October 1980. Although

**IN RE BLUE RIDGE TEXTILE PRINTERS v. PUBLIC SERVICE CO.**

[99 N.C. App. 193 (1990)]

Rate Schedule 22 was succeeded by Schedule 55 in January 1981, which was in turn succeeded by Schedule 17 in November 1986, the availability language in all three schedules was virtually identical. Such schedules were appropriate for "commercial and small industrial customers who are engaged primarily in the sale of goods, services, or manufacturing . . . who qualify for Priorities 1.2 through 2.4. . . ."

8. Under Commission Rule R6-19.2(f) as it was written in August 1981, all natural gas public utilities were required to review their customers' consumption every July or August for the previous twelve months and to automatically reclassify to a lower priority any customer whose consumption had increased to the point of placing it in a lower priority for any two of those months.

9. During April, May and June 1981, Blue Ridge's consumption of natural gas under account 7-0 exceeded 50 Mcf or 50 dekatherms per day. Because of this rise in consumption, the account's curtailment priority of 2.1, specifically reserved for accounts using less than 50 dekatherms per day, was no longer appropriate. Nevertheless, Public Service did not alter Blue Ridge's curtailment priority or rate schedule to reflect the increase.

In its final order entered 5 June 1989, the Commission declared that "Account 7-0 should have been reclassified to priority 2.5 as of September 1, 1981, based upon the increase in consumption." It then directed Public Service to make a refund to Blue Ridge's Account 7-0 for the difference between the actual charges to the account under Rate Schedules 55 and 17 and the charges that would have been made under Rate Schedules 60 and 20 (the schedules for priority 2.5) plus interest from 7 May 1985 until reassignment of the account. The Commission denied recovery for overcharges made more than two years prior to 7 May 1987, the date on which the Public Staff of the North Carolina Utilities Commission received complainant's letter containing the substance of his claim and requesting relief. The Commission determined that G.S. 62-132 barred recovery for any overcharges made more than two years prior to that date. Public Staff of the North Carolina Utilities Commission and respondent Public Service Company of North Carolina, Inc. appealed.

*North Carolina Utilities Commission—Public Staff Legal Division, by Staff Attorney David T. Drooz, for claimant.*

*Stott, Hollowell, Palmer & Windham, by James C. Windham, Jr., for claimant.*

*Burns, Day & Presnell, P.A., by F. Kent Burns, for respondent.*

HEDRICK, Chief Judge.

[1] Respondent argues on appeal that the Commission erred by placing Blue Ridge on a rate schedule for which it was never eligible. Public Service complains that by putting Blue Ridge on Rate Schedule 20 even though the corporation had no standby fuel or equipment, the Commission forced Public Service to discriminate against other rate 20 customers who were required to have such alternate fuel capability.

Appellate review of findings and conclusions by the Utilities Commission is governed by G.S. 62-94 which provides that "[u]pon any appeal, the rates fixed or any rule, regulation, finding, determination, or order made by the Commission under the provisions of this Chapter shall be prima facie just and reasonable." When the Commission's findings and conclusions are supported by competent, material and substantial evidence, considering the whole record, they are binding on the appellate court. *State ex rel. Utilities Comm'n v. Public Staff, N.C. Utils. Comm'n,* 317 N.C. 26, 343 S.E.2d 898 (1986).

We have reviewed the record on appeal and are satisfied that the Commission's findings and conclusions regarding the proper rate schedule for complainant's account 7-0 are based on competent, material and substantial evidence. Respondent's argument is therefore overruled.

[2] Respondent also contends the Commission erred "in placing Blue Ridge retroactively on a rate schedule in violation of its own order." Respondent refers us to an order by the Commission from 1978 in Docket No. G-100, Sub 21 which required new customers on priority 2.5 to install alternate fuel capability. Nevertheless, as the Commission explains, "[t]he 1978 Order . . . deals with the connection of new customers, not to reclassification of existing customers' priorities. . . ." Blue Ridge's plant was already in existence and receiving gas service from respondent when the 1978 order took effect. Consequently, the Commission did not violate

its own order when it placed Blue Ridge on priority 2.5 and Rate Schedule 20. Respondent's argument has no merit.

[3] Finally, Appellant Public Staff assigns as error the Commission's determination that the limitation provision in G.S. 62-132 barred claimant's recovery of overcharges made more than two years before the filing of the complaint. Public Staff complains that G.S. 62-132 does not apply to this case because the rates charged by Public Service were "established" by the Commission. According to appellant, G.S. 62-132 applies only where the rates in question are "other than those established by the Commission." We agree.

Chapter 62 provides "a clear statutory dichotomy" between rates "established" by the Commission and rates "permitted or allowed to go into effect at the instance of the utility." *Utilities Comm. v. Edmisten, Attorney General*, 291 N.C. 327, 230 S.E.2d 651 (1976). The remedy provided by G.S. 62-132 is available only where, upon petition of an interested party, the Commission holds a hearing and finds the rates charged to be (i) "other than the rates established by the Commission," and (ii) "unjust, unreasonable, discriminatory or preferential." "Established" rates, unlike "permitted" or "allowed" rates, are determined by the Commission after a full hearing, findings, conclusions and a formal order. Such rates are "deemed just and reasonable." In the present case, the rates charged by Public Service (from Rate Schedule 17) were clearly "established" by the Commission. As a result, the remedy and corresponding limitation period in G.S. 62-132 should never have been applied.

An appropriate claim for relief where the disputed rates are "established" by the Commission may exist under G.S. 62-140 which prohibits unreasonable discrimination by public utilities, or under G.S. 62-139 which prohibits a utility from receiving more compensation for services than the amount prescribed by the Commission. As Article 7 does not contain a statute of limitations for actions arising under G.S. 62-139 or G.S. 62-140, the Commission must, on remand, determine both the appropriate remedy and the proper statute of limitations.

The order of the Utilities Commission is remanded for further proceedings consistent with this opinion.

Remanded.

Judges PARKER and COZORT concur.